Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Awards of the Deputy Commissioners.
***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before Deputy Commissioner Ford as:
 STIPULATIONS
1. Plaintiff began working for defendant on 27 August 1991, and allegedly sustained a compensable injury on 12 March 1994, which is the last day that he performed work duties for defendant.
2. The parties further stipulate into evidence a Pre-trial Agreement dated 25 November 1997, containing approximately 50 pages of exhibits.
At the hearing before Deputy Commissioner Ford on 13 January 1998, the parties introduced the following exhibits:
a. Defendants Exhibit 1, marked D1, consisting of an accident report to which plaintiff objects.
b. Plaintiffs Exhibit 2, marked P2, consisting of a street diagram prepared by plaintiff.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 12 March 1994, plaintiff, who had ten years of military service and experience as an outreach minister, was employed by defendant-employer as a radio announcer and sales manager.
2. On 12 March 1994, defendant was and had been operating a small radio station broadcasting over a limited area seven days per week for approximately fourteen hours per day and employing more than three regular part-time and full-time employees, including plaintiff, Marilyn Cross, Dolphus Pearson Jr., James Thomas, Jimmy Honson, T.C. Patterson and Pearlie Johnson.
3. Among his duties as a radio announcer and sales manager, plaintiff announced musical and other programs during the day, conducted a religious program approximately once a week, solicited advertising, and on occasions conducted broadcasts from locations outside defendants regular studios at advertisers places of business.
4. On 12 March 1994, plaintiff was scheduled to do a broadcast from an advertisers business location from the hours of 9:30 a.m. until 10:00 a.m. and from 11:30 a.m. until 1:00 p.m. Plaintiff was to use the advertisers telephone line to connect to defendants radio station, thereby originating the program from the business location and broadcasting over the air via the telephone connection between the business and the radio station.
5. On the designated date of 12 March 1994, plaintiff first proceeded to defendants radio station, picked up equipment to use at the business site to implement the broadcast, and proceeded to the advertisers business location prior to 9:30 a.m. Upon his arrival at the business site, plaintiff found that the advertisers telephone had been disconnected. Plaintiff also discovered that he was missing a connecting wire and that the battery in his monitor was dead.
6. The advertiser was able to reinstate its telephone service at 9:59 a.m. It was too late to broadcast the first half-hour of the program, so after telephoning the station and informing them of the problems, plaintiff left the advertisers business location in his motor vehicle for the purpose of obtaining a new monitor battery and connecting wire so that he could do the proposed on-site broadcast at 11:30. Plaintiff was involved in an accident with a third-party motor vehicle before his mission could be accomplished. As a result of the accident, plaintiff sustained injury to his right wrist and low back and was hospitalized, which prevented him from returning to carry out the on-site broadcast as planned.
7. Although plaintiff did not file a workers compensation claim in this case until more than a year following the accident, defendant and the advertiser were notified of the accident and plaintiffs hospitalization on the day they occurred. There is no evidence that defendant was prejudiced in any manner by the delay by plaintiff in bringing his claim.
8. Following his automobile collision on 12 March 1994, plaintiff was transferred by ambulance to Central Carolina Hospital where he was examined, received x-rays and was subsequently discharged. Thereafter, he began receiving treatment from Dr. Smith.
9. Plaintiff initially presented to Dr. Smith on 16 March 1994. At that time, plaintiff had pain in his right wrist, back and neck. Dr. Smith recommended conservative treatment, including medications and physical therapy. Dr. Smith continued his conservative treatment through 20 April 1994, at which time he referred plaintiff to Dr. Brenner, an orthopedic surgeon. Thereafter, Dr. Smith continued to evaluate and monitor the progression of plaintiffs physical condition in conjunction with the treatment that was being provided by Dr. Brenner. Dr. Smith last evaluated plaintiff on 23 January 1995. Dr. Smith authorized plaintiff to be excused from work from 29 April 1994 through 2 May 1994.
10. Plaintiff first presented to Dr. Brenner on 17 May 1994. At that time, plaintiff had discomfort in his cervical and lumbosacral spine. Neurologically, he was intact. X-ray films failed to reveal any remarkable spinal condition. He continued to experience right hand and wrist pain. Dr. Brenner ordered a MRI that was performed on 1 June 1994. These studies revealed some degenerative disc disease, but no fractures or herniated discs.
11. Dr. Brenner also ordered a bone scan of plaintiffs right wrist. That study revealed injuries to the right wrist and to the third and fourth fingers of the right hand. Thereafter, Dr. Brenner continued to evaluate and treat plaintiffs right upper extremity. On 16 August 1994, he administered cortisone injections to the third and fourth fingers of his right hand.
12. On 13 September 1994, Dr. Brenner ordered a MRI of plaintiffs right wrist. That study revealed that plaintiff had a TFCC (cartilage) tear in his right wrist. On 17 October 1994, Dr. Brenner performed arthroscopic surgery to repair the cartilage tear in plaintiffs right wrist.
13. Following his surgery, plaintiffs right upper extremity condition improved significantly. Dr. Brenner last evaluated or treated plaintiff on 2 February 1995. Dr. Brenner continued plaintiffs work excuse until 1 March 1995.
14. Plaintiff did not return to work for defendant after 12 March 1994. When plaintiff was released to return to work on 1 March 1995, he contacted defendant and asked to be permitted to return to work. Defendant, having hired another employee to replace plaintiff, did not provide plaintiff with employment after 1 March 1995.
15. In July 1995, plaintiff returned to work as a habilitation technician earning wages equal to or greater than the wages he earned from defendant. Between 1 March 1995 and the date plaintiff returned to work in July 1995, plaintiff did not make a reasonable effort to obtain employment.
16. As a result of the incident on 12 March 1994, plaintiff sustained a twenty percent impairment of his right hand and a three percent impairment of his back.
17. As a result of his injury on 12 March 1994, plaintiff was incapable of earning wages from defendant or any other employer from 13 March 1994 through 28 February 1995.
18. Plaintiff requires no additional medical treatment as a result of the incident on 12 March 1994.
19. On March 12, 1994, defendant was not self-insured nor did it carry workers compensation insurance insuring against claims brought under the provisions of the North Carolina Workers Compensation Act.
20.On 30 April 1995, plaintiff instituted a third-party action against the operator of the other vehicle involved in the 12 March 1994 accident. The third-party action was settled in July 1995, and has not been approved by the Commission.
21. On 12 March 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
22. Plaintiff earned approximately $4,000.00 in wages from defendant during 1994. The I.C. Form 19 reflects an average weekly wage of $200.00, which constituted plaintiffs base pay. The I.C. Form 18 submitted by plaintiff reflects an average weekly wage of $250.00, which includes an average of $50.00 in weekly commissions plaintiff claims he earned. The Deputy Commissioner struck an average between the two, and found plaintiffs average weekly wage to be $225. 00. This method most nearly approximates the amount which plaintiff would be earning had it not been for his injury.
23. On 6 March 2000, plaintiff filed a Form 33 Request for Hearing in this case on the issue of piercing the corporate veil in order to satisfy the judgment against defendant.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission has jurisdiction over the parties and subject matter of this claim. N.C. Gen. Stat.97-3.
2. On 12 March 1994, the parties were bound by and subject to the North Carolina Workers Compensation Act, and the employer-employee relationship existed between the parties. N.C. Gen. Stat. 97-2.
3. On 12 March 1994, defendant employed 3 or more regular employees in its broadcasting business. As of that date, defendant was non-insured and failed to carry the necessary insurance coverage to insure against workers compensation claims as provided under the provisions of the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-2.
4. Plaintiff sustained an injury by accident arising out of and in the course of the employment with defendant-employer on 12 March 1994. N.C. Gen. Stat. 97-2.
5. On that date, plaintiff was earning an average weekly wage of $225. 00. N.C. Gen. Stat. 97-2.
6. "[N]o compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby. N.C. Gen. Stat. 97-22. Defendant received actual notice of plaintiffs accident on the date it occurred, and has failed to demonstrate any prejudice resulting from the delay in receiving written notice.
7. Plaintiff is entitled to payment of total disability compensation at the rate of $150.00 per week from 13 March 1994 through 28 February 1995. N.C. Gen. Stat. 97-29.
8. Plaintiff is entitled to payment of permanent partial disability compensation at the rate of $150.00 per week for forty-nine weeks. N.C. Gen. Stat. 97-31(23), 97-31(12).
9. Plaintiff is entitled to payment of all medical expenses incurred through 2 February 1995 as a result of his injury on 12 March 1994. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff total disability compensation at the rate of $150.00 per week from 13 March 1994 through 28 February 1995. This amount shall be paid in a lump sum, subject to the attorneys fee approved in paragraph 4.
2. Defendant shall pay plaintiff permanent partial disability compensation at the rate of $150.00 per week for forty-nine weeks. This amount shall be paid in a lump sum, subject to the attorneys fee approved in paragraph 4.
3. Defendant shall pay all medical expenses incurred by plaintiff through 2 February 1995 as a result of his injury on 12 March 1994.
4. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff is approved for plaintiffs attorney and shall be paid as follows: twenty-five percent of the lump sums due plaintiff in paragraphs 1 and 2 of this Award shall be deducted from those amounts and paid directly to plaintiffs attorney.
5. Defendant shall pay the costs, including expert witness fees for Dr. Smith and Dr. Brenner of $350.00 each.
***********
 ORDER
IT IS NOW, THEREFORE, ORDERED that this cause is remanded to a Deputy Commissioner for a hearing on the issue of piercing the corporate veil in order to satisfy the above judgment, and a hearing on the issue of fines to be assessed against defendant and prosecuted by the Office of the Attorney General in accordance with the provisions of N.C. Gen. Stat. 97-94.
This the ___ day of June, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER